# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT COOK;** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 06 C 5930** |
| | ) | |
| **vs.** | ) | |
| | ) | **Judge Robert W. Gettleman** |
| **THE CITY OF CHICAGO,** | ) | **Magistrate Judge Keys** |
| **A Municipal Corporation; and** | ) | |
| **Chicago Police Officers** | ) | |
| **JEROME FINNIGAN, and** | ) | **Jury Demand** |
| **Unknown Chicago Police Officers** | ) | |
| **John Does and Jane Roes 1-10;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

In his First Amended Complaint, Plaintiff, who is a fireman in the Chicago Fire Department, alleges that on May 28, 2002, a group of rogue police officers illegally pushed their way into his house with their guns drawn. After they got inside, they handcuffed Plaintiff and then beat and tortured him.

Specifically, after Plaintiff was handcuffed, he was thrown on the ground and repeatedly slapped in the head. Defendant-Officers also bent Plaintiff's head, which caused him extreme pain. During the torture session, on several occasions Plaintiff threatened to call 911. This caused the Defendant-Officers to beat and torture Plaintiff even more to teach Plaintiff that he would be punished for reporting, or attempting to report, what the Defendant-Officers were doing. Moreover, when Plaintiff asked his girlfriend to call 911, or asked for a sergeant, this too would cause the Defendant-Officers to increase the pain and torture. Clearly, the Defendant-Officers wanted Plaintiff to realize there would be dreadful consequences for reporting the incident.

Indeed, as alleged in the First Amended Complaint, Defendant FINNIGAN specifically told Plaintiff: "You don't want to f*** with us. Do you know who we are? We are the f***ing police. You f*** with us – you'll go to prison, you'll lose your job." The Defendant-Officers also told Plaintiff that they had friends in every police district in the City, and that they could have

Plaintiff pulled over anytime they wanted. The Defendant-Officers explained that when Plaintiff got pulled over, things could happen – drugs could appear, and an officer could say, "What the f*** is this in your car?"

Defendant-Officers repeatedly told Plaintiff that they could make one phone call and Plaintiff would lose his job as a Chicago fireman. Several times the Defendant-Officers told Plaintiff that they were the police, they had guns, and they could do "whatever the f*** they wanted." Plaintiff understood the Defendant-Officers repeated assertion that they had guns as meaning that they could shoot Plaintiff if they needed to for protection of their jobs.

Even though Plaintiff was terrified of the Defendant-Officers, he did make a phone call the next day to see if something could be done. An "investigator" came to Plaintiff's house. After listening to Plaintiff, the investigator told Plaintiff that if he pursued his complaint against the officers, he would suffer the consequences that were threatened by the Defendant-Officers: i.e. lose his job, and/or have drugs planted on him and  go to prison. Thus, the investigator essentially confirmed to Plaintiff that the Defendant-Officers threats were legitimate. Under duress, Plaintiff did not pursue his complaint against the officers.

Four years later, in 2006, Plaintiff was contacted by the Cook County State's Attorney's Office who was then conducting an investigation of certain SOS officers, including Defendant FINNIGAN, for running a reign of terror as described in Plaintiff's First Amended Complaint. When Plaintiff first spoke to the investigator, he was still terrified, and would not agree to meet with anyone or speak about the incident unless it was in a public place. Plaintiff eventually agreed to meet the investigators in a public parking lot. But, as a precaution, he had his girlfriend secretly watching the meeting, and he also brought about $500.00 in cash just in case something was "planted" on him and he needed bail money. Clearly, Plaintiff was still horror-struck of the potential horrendous consequences of pursuing a case or complaint.

**The Present Motion to Dismiss**

Defendant FINNIGAN has filed a motion to dismiss Plaintiff's First Amended Complaint. The gist of the motion is that Plaintiff's present complaint is barred by the statute of limitations which only provides two years for §1983 claims, and Plaintiff's lawsuit was filed about four years after the incident. FINNIGAN also attempts to argue that Plaintiff's First Amended Complaint does not provide a sufficient basis for equitable tolling or estoppel. For the

reasons explained below, FINNIGAN's arguments must be rejected.

The Seventh Circuit has repeatedly addressed issues of equitable tolling and equitable estoppel involving Illinois cases brought in the federal courts.

In <u>Shropshear v. Corporation Counsel of the City of Chicago, et al.</u>, 275 F.3d 593 (7th Cir. 2001), the court recognized that: "[T]he doctrine of equitable estoppel comes into play if the defendant takes active steps to prevent the Plaintiff from suing..." (<u>Id.</u> at 595). The <u>Shropshear</u> Court further recognized that: "Any deliberate or otherwise blameworthy conduct by the defendant that causes the plaintiff to miss the statutory deadline can be the basis for a defense of equitable estoppel in federal limitations law." (<u>Id.</u> at 597.) [1]

In this case, as explained above (and more fully in Plaintiff's First Amended Complaint), Defendant FINNIGAN illegally broke into Plaintiff's home at gunpoint and then beat and tortured Plaintiff. Every time Plaintiff mentioned calling 911 or asked for a sergeant, the beating only intensified. Defendant FINNIGAN knew that if Plaintiff, a Chicago fireman, reported what happened, FINNIGAN could be in serious trouble. To this end, FINNIGAN and the Defendant-Officers made sure that Plaintiff understood that if he pursued a case, Plaintiff would lose his job as a fireman, and be framed for a drug case and go to prison. In sum, Defendant FINNIGAN clearly took "active steps to prevent Plaintiff from suing." (<u>See</u> <u>Shropshear</u>, <u>supra</u>.) In addition, Defendant FINNIGAN and the other officers are clearly guilty of "blameworthy conduct" that caused Plaintiff to stay silent and not pursue his complaint or file a lawsuit. (<u>Id.</u>)

More recently, in <u>Fidelity National Title Insurance Co. of New York v. Howard Savings Bank</u>, 436 F.3d 836 (7th Cir.2006), the court again addressed the issues of tolling and estoppel. At the outset, the court asserted that Illinois caselaw in the state courts seemed to entangle and obscure equitable tolling and equitable estoppel: "[T]he Illinois cases that mention the term [equitable tolling] seem to mean by it equitable estoppel." (<u>Id.</u> at 839.) The court asserted that equitable estoppel (or what Illinois cases mean by equitable tolling) is: "[A] distinct doctrine governing cases in which the defendant ... in some way prevents [the plaintiff] from suing within

---

[1] The <u>Shropshear</u> court also ruled that for Illinois cases, state caselaw control issues of equitable tolling (<u>Id.</u> at 596), and federal caselaw governs issues of equitable estoppel. (<u>Id.</u> at 597).

the statutory period." (Id. at 839.)[2]

No matter what Illinois calls it, or should call it, it is clear that Illinois caselaw also provides a basis to bar Defendant FINNIGAN from pleading the statute of limitations. In Clay v. Kuhl, 189 Ill.2d 603, 727 N.E.2d 217, 244 Ill.Dec 918 (2000), the Illinois Supreme Court specifically held that: "Equitable tolling of a statute of limitations may be appropriate if ... the plaintiff has been prevented from asserting his or her rights in some extraordinary way." (189 Ill.2d at 614, 727 N.E.2d at 223, 244 Ill.Dec. at 924.) [3]

Here, Plaintiff's house was broken into at gunpoint by rogue police officers who did this kind of thing as a hobby until they got indicted. After they broke in, they beat and tortured Plaintiff (especially when he threatened to call 911 or asked for a sergeant). Before leaving, the Defendant-Officers repeatedly told Plaintiff that if he reported them, Plaintiff would not only lose his job, but also drugs would be planted on him and he would go to prison. And, no surprise, Defendant FINNIGAN and his cohorts were indicted for, *inter alia*, planting drugs on innocent people. Unquestionably, Plaintiff was "prevented from asserting his rights in some extraordinary way." (Id.)

### Conclusion

Chicago police officers have unique power over people, including the power to illegally break into homes, conduct illegal searches, make false arrests, beat and torture people, plant drugs on people, and cause innocent people to go to prison with little difficulty. This is what the

---

[2]See also, e.g., Miller v. Runyon, 77 F.3d 189, 191 (7th Cir.1996) (court recognized that where the plaintiff cannot reasonably be expected to sue in time because of circumstances beyond his control, the statute of limitations will be tolled until he is able to file his suit); Wixted v. DHL, 1998 WL 164922 (N.D.Ill. 1998) (court rules that if defendant made threats and Plaintiff relied on them in delaying filing charges, the defendant "would be estopped from invoking the statue of limitation."); Bilka v. Pepe's Inc., 601 F.Supp. 1254, 1257 (N.D.Ill. 1985) (plaintiff's allegations of threatened reprisals from employer's agents estop the employer from raising the time limitations issue on motion to dismiss); Mull v. ARCO Durethene Plastics, Inc., 784 F.2d 284, 292 (7th Cir. 1986)

[3] Also, in Neaterour v. Holt, 188 Ill.App.3d 741, 136 Ill.Dec. 160, 544 N.E.2d 846, 851 (1989) , the Illinois appellate court recognized that equitable estoppel "prevents a party from taking advantage of his own wrongdoing." Similarly, in Franke v. Geyer, 209 Ill.App.3d 1009, 154 Ill.Dec. 710, 568 N.E.2d 931, 934 (1991), the court stated that: "The test is whether, considering all the circumstances of the case, conscience and honest dealing required the defendant be estopped [from asserting the statute of limitations]."

Defendant-Officers did in this case for years until they were indicted. Since the present incident involved a Chicago fireman, this was an extraordinary case where the Defendants wanted to make sure that their illegal conduct was not reported or revealed. Thus they beat and tortured Plaintiff and made him promise that he would not pursue a case. Plaintiff was in fact terrified of the consequences, and initially agreed to not pursue the case. Only after the Defendant-Officers were arrested and charged did Plaintiff feel he could safely bring this case.

It is clear that the Defendant-Officers plan initially worked, and now they are attempting to avoid liability by pleading the statute of limitations. This Honorable Court should not permit the Defendants' plan to succeed, and allow them to benefit from their illegal conduct and threats.

WHEREFORE, for all the reasons stated above, Plaintiff respectfully requests that this Honorable Court deny Defendant FINNIGAN's Motion to Dismiss.

Respectfully submitted,

/s/ Lawrence V. Jackowiak
*Counsel for the Plaintiff*

Lawrence V. Jackowiak
Louis J. Meyer
Law Offices of Lawrence V. Jackowiak
20 North Clark Street - Suite 1700
Chicago, Illinois 60602
(312) 795-9595