UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT COOK, | ) | |
|         Plaintiff, | ) | No. 06 C 5930 |
| | ) | |
| vs. | ) | |
| | ) | Judge Robert W. Gettleman |
| CITY OF CHICAGO, et al., | ) | Magistrate Judge Keys |
|         Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF CHICAGO'S
MOTION FOR DISMISSAL OF MONELL CLAIM**

In his First Amended Complaint, Plaintiff, a Chicago firefighter, alleges that police officers who were members of the now disbanded Special Operations Section ("SOS") unit illegally entered his house with their guns out, and then tortured and terrorized him, his girlfriend, and her young children.

Plaintiff made a complaint the day after the torture session. In response, the City sent out an "investigator." Plaintiff explained to the investigator what the SOS officers had done. The investigator, unquestionably an agent of the City, accused Plaintiff of being a drug dealer and told Plaintiff that his complaint was bogus. (First Amended Complaint ¶ 83.)

The investigator told Plaintiff that if he pursued his complaint Plaintiff would lose his job. Plaintiff was further told that drugs could be "planted" and Plaintiff would go to prison. (¶ 86-7.) Finally, the investigator made it clear that the City's police officers could do "whatever the fuck they wanted."

Thanks to City policies, SOS cops actually did "whatever the fuck they wanted" for years until seven SOS officers were finally indicted and stripped of their police powers in 2006. During their reign of terror, scores of complaints were made to the City about the gross misconduct and abuse of power by SOS officers. Not surprisingly, all the complaints were brushed aside and disciplinary action was never taken. As exemplified by this case, it was also a practice of SOS officers and other City officials to threaten victims with further abuse and persecution if they tried to pursue a complaint.

The City's policies regarding the special unit was simply abhorrent. Indeed, the City knowingly permitted the SOS officers to remain on the streets – with their City-issued badges and

guns – to terrorize powerless and defenseless citizens for years. The nightmare only ended when an outside agency, the Cook County State's Attorney's Office, finally took action.

Previously in this litigation, Defendant FINNIGAN tried to escape liablity by asserting the statute of limitations. This Honorable Court rejected FINNIGAN's argument based on equitable estoppel. Now the City has decided to give it a shot and try to escape liability by also asserting the statute of limitations. As explained below, the City's arguments should also be rejected.

In its present motion, the City argues that Plaintiff does not allege any "affirmative acts" of misconduct by the City. The City also contends that a governmental entity cannot be held liable under an estoppel theory based on "unauthorized acts" of agents. Neither argument withstands scrutiny.

Traditionally, estoppel has been applied in cases where a party was not aware of the factual basis for a claim because of fraud or misconduct of the defendant. In this case, however, Plaintiff knew about his claim, but did not come forward because of the threats he received from City agents and officers. In the decision denying Defendant FINNIGAN's motion to dismiss, this Honorable Court ruled that: "Any deliberate or otherwise blameworthy conduct by the defendant that causes the plaintiff to miss the statutory deadline can be the basis for a defense of equitable estoppel in federal limitations law." (Dkt. 29 at p. 4.)

In its motion, the City cites numerous cases that rule on application of estoppel in inapposite factual scenarios. Unlike any case cited by the City, in this case Plaintiff alleges that a City agent told Plaintiff that he would lose his job and face false arrest and imprisonment if he pursued a case against the City's esteemed SOS officers. Clearly such conduct meets any definition of an "affirmative act" that the City asserts is required to warrant estoppel against it.

Predictably, the City has also resurrected a new version of its "outside the scope-of-employment" argument, an old favorite in the City repertoire. In the instant motion, the City contends that estoppel should not be allowed if an agent committed an act that was "unauthorized." (City motion at p. 5.) This argument fails.

Almost by definition, equitable estoppel requires fraud or misconduct. Such conduct, of course, will never be expressly authorized. So if equitable estoppel is only allowed in cases where fraud or other actions of affirmative misconduct is authorized, it will never be allowed. Such an incongruous result should not be adopted by this Honorable Court.

In <u>Mendrala v. Crown Mortg. Co.</u>, 955 F.2d 1132 (7th Cir. 1992), the Seventh Circuit acknowledged that the application of equitable estoppel against the government is a peculiar and extraordinary doctrine infrequently addressed by the courts. The <u>Mendrala</u> court recognized that there are not really strict guidelines when estoppel should be applied against the government:

> The [plaintiffs] correctly point out that this circuit and other courts have allowed estoppel to be applied against the government in certain circumstances. These exceptional cases have not established crystal-clear standards as to when government entities may be estopped.... [C]ourts have stated in several cases that "affirmative misconduct" on the part of the government would justify an exception to the no-estoppel rule. Affirmative misconduct has been defined as something more than mere negligence. Similarly, this circuit has allowed estoppel in situations in which the Government specifically encouraged a mistake of which it then took advantage.

<u>Id.</u> at 1141 (citations and quotation marks omitted).

Applying these principles to the present facts, this Honorable Court should find equitable estoppel applicable. Unquestionably, Plaintiff is not asserting "mere negligence," and, as this Honorable Court has already recognized, this is certainly an "exceptional case." Also, there was certainly "affirmative misconduct" on behalf of the City of Chicago. Plaintiff alleges that the City knowingly allowed a special group of police officers to run an on-the-job criminal enterprise for years with badges and powers bestowed by the City. Without the City's knowledge and behind-the-scenes participation, there would not have even been an SOS scandal.

This Honorable Court should not now allow the City to escape liability and exposure for its unconscionable role in the SOS scandal. The City's motion should be denied.

        Respectfully submitted,

        /s/ Lawrence V. Jackowiak
        *Counsel for the Plaintiff*

Lawrence V. Jackowiak
Louis J. Meyer
Daniel P. Kiss
Law Offices of Lawrence V. Jackowiak
20 North Clark Street - Suite 1700
Chicago, Illinois 60602
(312) 795-9595