IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT COOK, DENISE GERLOSKI, HEATHER GERLOSKI, a minor, by and through Denise Gerloski, her mother and next best friend, and THOMAS GERLOSKI, a minor, by and through Denise Gerloski, his mother and next best friend,<br><br>    Plaintiffs,<br>  v.<br><br>THE CITY OF CHICAGO, a municipal corporation, and Chicago Police Officers JEROME FINNIGAN, Star 5167; KEITH FUELLING, Star 13618; PAUL BURG, Star 8204; JENNIFER PRZYBYLO, Star 8547; KEN ABELS, Star 1747; and JOHN BLAKE, Star 454,<br><br>    Defendants. | No. 06 C 5930<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Cook, a fireman with the Chicago Fire Department, sued defendants the City of Chicago, and police officers Jerome Finnigan, Keith Fuelling, Paul Burg, Jennifer Przybylo, Ken Abels, and John Blake,[1] alleging violations of 42 U.S.C. § 1983, and an indemnification claim pursuant to 745 ILCS 10/9-102.[2] All defendants have moved pursuant to

---

[1] John Blake is inadvertently referred to as "James Blake" in several documents, including Defendants' Motion for Summary Judgment, defendants' memorandum in support of that motion, and Defendants' Rule 56.1 Statement of Uncontested Facts in support of that motion. The court will treat all references to "James Blake" as "John Blake."

[2] Plaintiffs Denise Gerloski and her minor children, Heather and Thomas, also filed suit against defendants. Gerloski expressed an intention to file a motion to dismiss her claims in footnote one of Plaintiff's Response to Defendants' Motion for Summary Judgment, but no such motion has been filed to date. Because Gerloski offers no opposition to the motion for summary judgment, the court grants defendants' motions as to Gerloski and her minor children. Cook is treated as the only plaintiff for the purposes of this opinion.

Fed. R. Civ. P. 56 for summary judgment on Counts I through VIII, arguing that these claims are time-barred by the applicable statute of limitations. Separately, defendants Abels and Blake have moved pursuant to Fed. R. Civ. P. 56 for summary judgment on Count VIII, the only count against them, arguing that plaintiff cannot establish the elements of a § 1983 conspiracy. Plaintiff's two additional claims in Counts IX and X are not challenged in either motion.[3] For the reasons stated below, defendants' motion for summary judgment on Counts I through VIII is denied. Defendants Abels' and Blake's motion for summary judgment on Count VIII is granted.

## **BACKGROUND**[4]

On May 18, 2002, four Chicago Police Officers—Przybylo, Fuelling, Finnigan, and Burg—forced their way into plaintiff's home. At least one officer had a gun drawn. Plaintiff, his girlfriend, Denise Gerloski, and her two children, Heather and Thomas, were all present at the house. Once inside, the officers threw plaintiff on the ground, handcuffed him, and slapped him on the head. When plaintiff threatened to call 911, he was beaten further. Przybylo and Finnigan also threatened to take the children away if Gerloski called 911. Although Gerloski did not call, Przybylo isolated the children in the kitchen. Subsequently, Fuelling and Finnigan took plaintiff upstairs and continued to abuse him for about thirty to sixty minutes. Throughout the ordeal, Finnigan and Fuelling repeatedly threatened plaintiff by declaring that they could do what they wanted to him, get him fired, or frame him by planting something in his car. The

---

[3]A limited consent to entry of judgment for the City has been entered on Count IX—a Monell claim against the City (Doc. 322). Count X asserts a state law indemnification claim against the City.

[4]In their motion, all defendants have stipulated that these facts are to be accepted as true for the purposes of summary judgment only. The facts are taken from the parties' Local Rule 56.1 Statements of Material Facts and are undisputed unless otherwise noted.

officers also told plaintiff he would suffer consequences if he did not remain quiet about what had transpired. As the officers were finally leaving plaintiff's house, they bent him over the front railing and reaffirmed their threats.

After the incident, plaintiff filled a complaint. To whom and when plaintiff complained are both disputed facts. Plaintiff claims that he called the Chicago Police Department Internal Affairs Division, but defendants claim that he simply called the emergency line. Plaintiff claims that he called the day following the incident, while defendants claim that he waited several days before calling.

Lieutenant John Blake, who supervised the officers involved in the May 18th incident, assigned Sergeant Ken Abels to investigate plaintiff's complaint. Blake also supervised Abels throughout the investigation. Abels had regularly supervised Fuelling, Burg, and Przybylo for about two years around the time of the incident.

During Abel's first meeting with plaintiff, who asked that a paper trail be created in case anything happened, Abels called plaintiff a liar. During the next meeting, Abels threatened to get plaintiff fired if he did not drop his complaint and repeated verbatim the threats made by the other officers on May 18th. Abels completed his investigation in June 2002 and found that plaintiff's allegations were "not sustained" and "unfounded." Blake approved the report.

In May 2006, the Cook County State's Attorney's Office contacted plaintiff as part of an investigation into corrupt officers, including Finnigan. Plaintiff eventually agreed to talk with investigators. The initial meeting occurred in a public parking lot, and Gerloski watched the meeting from a distance. Plaintiff, who was still fearful, brought bail money as a precaution in case he was arrested during the meeting. Plaintiff and Gerloski identified at least three of the

officers who were involved in the May 2002 incident. Then, in September 2006, Finnigan and other Chicago police officers were arrested and charged with felonies, including home invasion, armed violence, aggravated kidnapping, narcotics delivery, burglary, and official misconduct. Shortly thereafter, plaintiff hired an attorney. He filed the instant suit on November 1, 2006.

## DISCUSSION

Defendants have separately filed two motions for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56. The movant bears the burden of establishing both elements, Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990), and all reasonable inferences are drawn in favor of the non-movant, Jones v. Illinois Bell Tel. Co., 2013 WL 5781814, at *3 (N.D. Ill. Oct. 24, 2013) (citing Fisher v. Transco Services-Milwaukee Inc., 979 F.2d 1239, 1242 (7th Cir. 1992)). If the movant satisfies the burden, then the non-movant must set forth specific facts showing there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851, at *2 (N.D. Ill. Feb. 12, 2013). In doing so, the movant cannot simply show that there is some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, at *2 (N.D. Ill. Mar. 13, 2013) (citing Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

All defendants named in Counts I through VIII have moved for summary judgment in the first motion. They argue those counts—plaintiff's §1983 claims—are precluded by the applicable Illinois statute of limitations.[5] Section 1983 claims are subject to "the statute of

---

[5]Defendants previously moved to dismiss plaintiff's claims and the Gerloskis's claims as time barred. In orders addressing defendants' statute of limitations argument, the court found
(continued...)

4

limitations for personal injury in the state where the injury occurred." Savory v. Lyons, 469 F.3d 667, 672 (7th Cir. 2006) (citing Kelly v. City of Chicago, 4 F.3d 509, 510 (7th Cir. 1993)). Here, the injuries occurred in Illinois where the statute of limitations for personal injury actions provides a two-year filing period. 725 ILCS 5/13-202. Although the court looks to the Illinois' statute of limitations, "the accrual of claims is governed by federal law." Savory, 469 F.3d at 672. "Section 1983 claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." Id. (quoting Kelly, 4 F.3d at 511) (internal quotation marks omitted). In the instant case, the alleged § 1983 violations occurred in 2002. Plaintiff admits that he immediately knew his constitutional rights had been violated. Therefore, the statute of limitations allowed him to sue until May 2004. Plaintiff did not file until 2006, and he concedes that he did not comply with the applicable statute of limitations.

Plaintiff argues in part[6] that the doctrine of equitable estoppel bars the application of the statute of limitations defense. Federal equitable estoppel law controls this issue even though defendants rely on an Illinois' statute of limitations. Smith v. City of Chicago Heights, 951 F.2d 834, 841 (7th Cir. 1992). "Equitable estoppel prevents a party from asserting the expiration of the statute of limitations as a defense when that party's improper conduct has induced the other into failing to file within the statutory period." Ashafa v. City of Chicago, 146 F.3d 459, 462 (7th Cir. 1998).

---

[5](...continued)
equitable estoppel was appropriate against all defendants based on the threats made by Finnigan. See Doc. 29, Order dated June 11, 2007 (hereinafter, "R. 29") and Doc. 129, Order dated June 27, 2008 (hereinafter, "R. 129").

[6]Plaintiff also makes arguments regarding equitable tolling. Given the court's ruling on the equitable estoppel issue, the court need not reach these arguments.

To show equitable estoppel is appropriate, a plaintiff must first prove that "the defendant [took] active steps to prevent the plaintiff from suing in time[.]" Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-51 (7th Cir. 1990). These steps may be "[a]ny deliberate or otherwise blameworthy conduct by the defendant that causes the plaintiff to miss the statutory deadline[.]" Shropshear v. Corp. Counsel of City of Chicago, 275 F.3d 593, 597 (7th Cir. 2001). The blameworthy conduct, though, must be something "beyond the defendant's wrongdoing upon which the plaintiff's claim is founded or inferences that may be drawn therefrom." Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch., 167 F.3d 1170, 1175 (7th Cir. 1999) (citing Cada, 920 F.2d at 451). This inquiry "focuses on whether the defendant acted *affirmatively* to stop or delay the plaintiff from bringing suit within the limitations period." Smith, 951 F.2d at 841 (emphasis in original).

"The question of whether the plaintiff has shown that the defendant took active steps to prevent her from suing in time (for equitable estoppel claims) or that she was unable to discover the fraud despite due diligence (for an equitable tolling claim) is ordinarily one for a jury." Ogilvie v. Beale, 93 C 2934, 1994 WL 33972 (N.D. Ill. Feb. 4, 1994); see also W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc., 928 F. Supp. 2d 976, 987 (N.D. Ill. 2013) ("Although the reasonableness of a party's reliance is normally a question of fact, it can be determined as a matter of law where no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn."). To succeed on its motion for summary judgment regarding the statute of limitations, defendants must demonstrate that no reasonable jury could find that defendants actively took steps to prevent plaintiff from filing his claim, or that plaintiff actually and reasonably relied on those threats.

Both on May 18, 2002, and throughout Abels' investigation, the officers engaged in wrongful conduct that made plaintiff afraid to sue. On May 18th, the officers beat plaintiff when he threatened to call 911. Przybylo and Finnigan threatened Denise Gerloski that they would take the children away if she called the police. Fuelling and Finnigan told plaintiff to keep his mouth shut and threatened to get him fired or frame him by planting something in his car. Then, after plaintiff reported the incident, Abels told him to drop his complaint and called him a liar and a drug dealer. Abels also repeated verbatim threats that the officers made on May 18th. Specifically, Abels threatened to get plaintiff fired and to frame him by planting something in his car.

Defendants argue that Blake, Burg, and Przybylo cannot be estopped from asserting the statute of limitations because they did not engage in any wrongful conduct.[7] Defendants are simply wrong about Przybylo's conduct because she threatened to take away the children if Gerloski called 911. The threats made by Finnigan, Fuelling, Przybylo, and Abels prevented plaintiff from filing suit against Blake and Burg because a suit against either would necessarily have included allegations about their colleagues' actions. As this court previously held, these threats may be sufficient to support the application of equitable estoppel against all defendants. See R. 129, at 2. ("Any such lawsuit, however, would necessarily contain allegations against Finnigan. Thus Finnigan's threats were sufficient for the application of equitable estoppel against all defendants.").

---

[7]Defendants argued in their initial brief that the court should ignore the threats made on May 18th and consider only Abels' threats because these are "the only threats made outside of the incident itself." Defendants concede in their response brief, though, that they were no longer arguing that "any threats made around the same time as the commission of a constitutional violation, as a rule, cannot support estoppel as to that constitutional claim."

7

Threatening a victim of police brutally to ensure he does not reveal what transpired is clearly wrongful. R. 29, at 4. When such threats are made with the clear intent to prevent a plaintiff from seeking redress for the underlying wrong, the threats constitute active steps distinct from that underlying wrong. Thus, the court reaffirms its previous finding that threats such as those made by Przybylo, Fuelling, Finnigan, and Abels can constitute sufficiently blameworthy conduct. See R. 29, at 4; Cook v. City of Chicago, 2008 WL 1883437, at *2 (N.D. Ill. Apr. 25, 2008).

The second element of equitable estoppel is reasonable and actual reliance on the defendants' conduct or representations. Mull v. ARCO Durethene Plastics, Inc., 784 F.2d 284, 292 (7th Cir. 1986) (quoting Naton v. Bank of California, 649 F.2d 691, 696 (9th Cir. 1981)). In the instant case, the officers' threats and plaintiff's reaction to them establish that he reasonably and actually relied on defendants' threats in deciding not to sue. It is clearly reasonable to be fearful when several police officers invade one's home, beat him, and then threaten that, if he reports their illegal conduct, they will take away his girlfriend's children, have him fired, and frame him. Given this context, plaintiff's decision not to file suit is, in and of itself, sufficient to support an inference of actual reliance. Further, there is additional evidence that plaintiff was fearful as late as 2006. For example, in plaintiff's first meeting with the Cook County State's Attorney's Office, he was so afraid that he actually brought bail money in case he was walking into a setup.

Defendants respond to these facts with a scattershot of arguments. First, defendants assert that plaintiff cannot prove actual reliance on the threats of May 18th because he subsequently reported the incident. This argument implicitly assumes that all individuals faced

with such circumstances believe that the risk of reprisal is the same for reporting misbehavior and for filing suit against the offending officers. Defendants fail to present any evidence or further arguments to support this essential assumption. In fact, in the instant case plaintiff demonstrated that he was still afraid of reprisal when reporting the incident by asking that a paper trail be created in case anything happened. His fear was then reinforced when Abels repeated the threats made by his fellow officers. The mere fact that plaintiff reported alleged police misconduct does not make equitable estoppel inappropriate.

Defendants next assert that plaintiff did not actually rely on the threats because he did not move to another residence. This argument is ridiculous. If crooked cops threaten an individual's livelihood and safety, it is not clear that changing his address would offer much protection. Even if this were the case, it would be unjust and unreasonable to require that a victim of police misconduct uproot his life or be barred from raising equitable estoppel. Defendants also argue that plaintiff's reliance is not reasonable because he could have discussed his legal options with the two personal injury attorneys that represented plaintiff in unrelated actions between 2002 and 2004. This contention is just as preposterous as defendants' previous contention. Plaintiff feared that the officers would retaliate against Gerloski, her children, and himself if he sued them. Talking about legal strategies with two personal injury attorneys would not quell such fear.

Defendants rely on the two opinions issued in <u>Castro v. City of Chicago</u>, 2013 WL 5435275 (N.D. Ill. Sept. 30, 2013) and 2013 WL 427109 (N.D. Ill. Feb. 1, 2013), to support their argument that plaintiff did not actually and reasonably rely on defendants' conduct. However, <u>Castro</u> does not support defendants' arguments on either wrongful conduct or reliance. In

9

Castro, 2013 WL 427109 (N.D. Ill. Feb. 1, 2013), police officers found narcotics, a gun and cash in the plaintiff's house. Id. at *1. After stealing some of the money, the officers agreed not to charge the plaintiff if he provided the name of another individual with money, guns or drugs. Id. After plaintiff complied, the officers told him that they would return to his house all the time and would expect him to continue feeding them information. Id. The officers also threatened to shoot the plaintiff's dog and later went to a neighbor's home to look for the plaintiff. Id. at *4-5. The court in Castro noted that the officers' actions were "not active steps taken to prevent Plaintiff from suing in time; rather, they are a recitation of the facts of the underlying incident." Id. at *4. Such threats may have created "a general fear of police reprisal," but that is insufficient wrongful conduct when they did not prevent the plaintiff from filing. Id. *5. Therefore, the officers' conduct did not go "above and beyond," but rather, "was merely a component of" the wrongdoing on which the plaintiff's claim was based. Id.

Castro is distinguishable from the instant case. Here, the officers made express threats that were specifically intended to prevent plaintiff from seeking redress. They beat him, threatened to take away his girlfriend's children, and warned they would frame him if anyone called 911. The officers made these threats for the sole purpose of ensuring that plaintiff did not call 911 or contact any other source of help. During the subsequent investigation, Abels told plaintiff to drop his complaint and repeated his colleagues' earlier threats. These threats were entirely distinct from the officers' other alleged unlawful conduct, and the mere fact that they were made concurrent with other illegal activity does not prevent the threats from justifying the application of equitable estoppel.

The court therefore finds that a reasonable jury could find that plaintiff actually and reasonably relied on defendants' threats.

The final element plaintiff must prove is that he did not wait an indefinite time before filing suit "once the circumstance giving rise to the estoppel is removed[.]" Shropshear, 275 F.3d at 597 (citing Bailey v. International Brotherhood of Boilermakers, Local 374, 175 F.3d 526, 530 (7th Cir. 1999)). Plaintiff sued within six months after he was contacted by the Cook County State's Attorney's Office and two months after Finnigan and other officers were arrested. Until these events transpired, plaintiff was reasonably in fear of defendants' threats. As this court has already found, see R. 29, Order, at 4, plaintiffs' two-month delay was not indefinite.

The court finds that plaintiff has provided sufficient evidence to conclude that a reasonable jury could find that the statute of limitations did not start running until September 8, 2006, when Finnigan was arrested. See Bailey, 175 F.3d at 530 (citing Cada, 920 F.2d at 451) ("[T]he statute of limitations only begins to run once the defendant's wrongful actions to induce a filing delay have ceased"); see also R. 129, at 2 (finding that the impediment to suit was not removed until Finnigan's arrest). Because plaintiff filed this suit on November 1, 2006, his suit would therefore be timely and not barred by the statute of limitations. As a result, the court denies defendants' motion for summary judgment based on the statute of limitations defense.

Separately, defendants Abels and Blake have moved for summary judgment on Count VIII, which is a civil conspiracy claim and the only count brought against them.

"[T]o prevail on his Section 1983 conspiracy claim, [plaintiff] must prove: (1) an express or implied agreement among defendants to deprive him of his constitutional rights, and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." Lyons v.

11

Adams, 257 F. Supp. 2d 1125, 1134 (citing Scherer v. Balkema, 840 F.2d 437, 442 (7th Cir. 1988)).

Defendants argue in part that plaintiff has not provided sufficient evidence of an agreement involving Abels and Blake. To satisfy this element, plaintiff must offer evidence "that defendants 'directed themselves toward an unconstitutional action by virtue of a mutual understanding[,]' and support such allegations with facts suggesting a 'meeting of the minds.'" Thurman v. Village of Hazel Crest, 570 F. Supp. 2d 1019, 1029 (N.D. Ill. 2008) (quoting Amundsen v. Chicago Park Dist., 218 F.3d 712, 718 (7th Cir. 2000)). Relatedly, plaintiff must offer evidence to support the claim "that each conspirator understood the general objectives of the scheme and agreed to further the scheme." Myatt v. City of Chicago, 816 F. Supp. 1259, 1267 (citing Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)). While circumstantial evidence may be used to prove an agreement, a plaintiff must still provide "specific facts" that support his claim. Thurman, 570 F. Supp. 2d at 1029. A conspiracy claim "cannot survive summary judgment based on vague conclusory allegations[.]" Id. (citing Amundsen, 218 F.3d at 718); see also Cooney v. Casady, 746 F. Supp. 2d 973, 975 (N.D. Ill. 2010) ("When a plaintiff claims that defendants conspired to violate [his] civil rights, [he] must proffer specific facts tending to show that a conspiracy existed to survive a summary judgment motion; conclusory allegations will not suffice." (citing Stagman v. Ryan, 176 F.3d 986, 1003 (7th Cir. 1999))).

Plaintiff admits that Abels and Blake did not know about the events of May 18, 2002, before or when they occurred. Plaintiff argues, though, that Abels and Blake reached a conspiratorial agreement regarding the incident of May 18th, the subsequent cover-up, and a large-scale scheme to illegally invade homes.

12

Plaintiff claims that the agreement regarding May 18th can be inferred from Finnigan's and Blake's close relationship and Blake's role as a supervisor. The fact that Finnigan and Blake worked together over an extended period of time and that Blake previously approved illegal conduct by Finnigan are not alone proof of an agreement regarding either May 18th or the cover-up. Blake's status as a supervisor, in and of itself, likewise provides no proof of an agreement. Shorters v. Bynum, 1990 WL 129575, at *4 (N.D. Ill. 1990) ("The mere fact that Sandberg was Bynum's supervisor is not enough to implicate him in the conspiracy." (citing Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988))). Plaintiff must show that "the supervisor himself was personally involved." Shorters, at *4 (citing Jones, 856 F.2d at 992). He fails to do so and, instead, relies on a theory of respondeat superior. This doctrine, however, is not applicable in § 1983 cases. Flowers v. Secrets Night Club, 2010 WL 4625396, at *2 (N.D. Ill. 2010) (quoting West By and Through Norris v. Waymire, 114 F.3d 646, 649 (7th Cir. 1997)).

The allegations against Abels, however, are more substantive. Plaintiff claims that in his initial meeting with Abels, Abels immediately called him a liar and a drug dealer. In the subsequent meeting, Abels threatened plaintiff's job, threatened to plant drugs on him, and repeated verbatim the threats the officers had made on May 18th. The fact that Abels repeated the very same threats as the officers gives rise to an inference that there was a mutual understanding between the officers and Abels regarding their attempt to prevent plaintiff from pursuing his claim. If Abels had simply rebuffed plaintiff's claim, there might not be sufficient factual allegations to support an inference that he acted in concert with the other officers; however, the fact that Abels repeated the very same threats utter by defendants allows an inference that Abels intentionally joined the officers' effort to suppress plaintiff's report. The

13

court cannot conclude that, as a matter of law, Abels did not conspire with the other officers to intimidate plaintiff into not pursuing his claim.

However, "subsequent overt acts may not be used to infer a conspiratorial agreement." Curtiss v. Chicago Police Officers, 1992 WL 714948, at *1 (N.D. Ill. 1992) (citing Flores v. City of Chicago, 682 F. Supp. 950, 953 (N.D. Ill. 1988)). An inference that Abels subsequently joined the conspiracy to intimidate plaintiff does not necessarily indicate that Abels had knowledge of the officers' actions prior to or on May 18th, and is therefore responsible for those violations. Although Abels may have subsequently joined the conspiracy to suppress plaintiff's complaint, the record does not support an inference that he directed himself toward the alleged constitutional violations of the officers on May 18th.

Plaintiff also argues that Abels' potential agreement to cover up the other officers' misconduct violates plaintiff's civil rights because Abels' actions denied plaintiff access to the courts. "Although the Seventh Circuit has recognized a § 1983 claim where a defendant tries to cover-up unlawful conduct, the basis for this type of claim lies in the denial of a plaintiff's right of access to the courts. A cover-up leads to a denial of access to the courts only where the cover-up was to some extent successful." Kies v. City of Aurora, 149 F. Supp. 2d 421, 424 (N.D. Ill. 2001) (citing Vasquez v. Hernandez, 60 F.3d 325, 329 (7th Cir. 1995)) (citations omitted). "[A]n attempt to cover up police wrongdoing which succeeded only briefly in hiding the facts from the plaintiffs, and which ultimately neither prevented the plaintiffs from pursuing relief nor reduced the value of their claim" is not actionable under § 1983. Cefalu v. Vill. of Elk Grove, 211 F.3d 416, 423 (7th Cir. 2000) (citing Vasquez, 60 F.3d at 329).

In Bell v. City of Milwaukee, 746 F.2d 1205, 1261 (7th Cir. 1984) (overruled on other grounds), the Seventh Circuit held that lengthy delay in the pursuit of one's claims caused by police suppression of evidence is actionable under § 1983. The court in Bell held that the delay was extraordinary and extreme enough to constitute prejudice to plaintiffs.

Recently, in Rainey v. City of Chicago, 10 C 07506, 2013 WL 941968 (N.D. Ill. Mar. 11, 2013), the court held that police officers' concealment of material facts "undoubtedly hindered" the plaintiff's attempts to hold police officers responsible for an excessive force claim. Because the plaintiff was forced to depose the officers to obtain the information necessary to adequately plead his claim, the court found there was sufficient harm to sustain a denial of access claim.

In the instant case, plaintiff's efforts to pursue redress for the officers' constitutional violations were significantly delayed. A reasonable jury could find that Abels' conduct in suppressing relevant evidence and intimidating plaintiff caused the delay in his filing and therefore abridged plaintiff's constitutional rights. Additionally, plaintiff has been forced to address additional hurdles as a result of the delay. As demonstrated by the instant motion, plaintiff's claim has been hindered multiple times by defendants' assertion of the statute of limitations defense. If Abels' threats reinforcing the officers' warnings had not occurred, plaintiff may not have delayed in filing his case, and would not be facing summary judgment on the statute of limitations and equitable estoppel issues. Because a reasonable jury could find that Abels conspired with the officers to cover up the constitutional violations of May 18, 2002, and such actions prejudiced plaintiff, the court denies Abels' motion for summary judgment on Count VIII.

Plaintiff's final argument is that there was an agreement to conduct a large number of illegal warrantless searches. Plaintiff attempts to establish this fact by noting past police misconduct and the existence of a code of silence. The past misconduct is, again, merely consistent with the existence of an agreement. While a code of silence may be probative, it is insufficient when there is no "showing that any specific individuals agreed to follow the alleged code of silence." Sledd v. Lindsay, 780 F. Supp. 554, 559 (N.D. Ill. 1991). In the instant case, Burg testified that he would not report on misconduct by his colleagues. The testimony of one fellow officer, though, has no bearing on whether Abels and Blake also behaved similarly. Further, plaintiff fails to explain how the code of silence, which serves to cover-up misconduct, is proof of an implicit agreement to engage in the misconduct in the first place.

Plaintiff has failed to show that Blake expressly or implicitly agreed to participate in any conspiracy to deprive him of his civil rights.[8] Thus, he cannot satisfy the elements of a § 1983 conspiracy as to Blake, and defendant Blake's motion for summary judgment on Count VIII is granted. Plaintiff has, however, present sufficient evidence to conclude that a reasonable jury could find that Abels' actions in covering up the other officers' conduct violated plaintiff's right of access to the courts. For this reason, the court denies defendant Abels' motion for summary judgment on Count VIII.

## **CONCLUSION**

For the foregoing reasons, defendants Finnigan, Fuelling, Burg, Przybylo, and Blake's motion for summary judgment on Counts I through VIII, and defendant Abels' motion for

---

[8] Given the court's ruling on the issue of an agreement, the court need not discuss whether plaintiff can establish the other elements of a § 1983 conspiracy.

summary judgment on Count VIII are denied. Defendant Blake's motion for summary judgment on Count VIII is granted. This matter is set for a status hearing on August 21, 2014, at 9:00 a.m.


**ENTER:** **August 5, 2014**

_____
**Robert W. Gettleman**
**United States District Judge**